**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| HOUSTON CASUALTY COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. _____ |
| | ) | |
| BB&T CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

**COMPLAINT**

Plaintiff Houston Casualty Company ("Houston Casualty"), as partial subrogee of

Wilmington Savings Fund Society, FSB ("WSFS"), states the following Complaint against

Defendant BB&T Corporation ("BB&T") and in support thereof alleges the following:

**PARTIES AND NON-PARTY SUBROGOR**

1.      Plaintiff Houston Casualty is a corporation organized and existing under the laws

of Texas, with its principal place of business in Texas.  Houston Casualty legally transacts

insurance business in Delaware and within the geographical jurisdiction of this Court.

2.      Defendant BB&T is a corporation organized and existing under the laws of North

Carolina, with its principal place of business in North Carolina.  BB&T is the successor in

interest to National Penn Bancshares, Inc. ("National Penn"), having acquired National Penn in

April 2016.  As part of that acquisition, BB&T assumed all of National Penn's obligations under

a June 24, 2010 Stock Purchase Agreement between National Penn and WSFS (the "SPA").

3.      Non-party subrogor WSFS is a corporation organized and existing under the laws

of Delaware with its principal place of business in the State of Delaware.  WSFS is the successor

in interest to Christiana Bank & Trust Company ("Christiana"), which WSFS acquired from

National Penn pursuant to the SPA.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      This Court has personal jurisdiction over BB&T because, at a minimum, it is the successor in interest to National Penn, which purposefully availed itself of this jurisdiction by entering into the SPA and assuming continuing obligations to WSFS, a Delaware corporation.

6.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the Complaint occurred in Delaware.

## FACTUAL ALLEGATIONS

**I.      The Stock Purchase Agreement**

7.      In 2010, WSFS acquired Christiana from National Penn pursuant to the terms of the SPA.  Prior to this acquisition, Christiana was a wholly-owned subsidiary of National Penn.

8.      The SPA obligates National Penn to indemnify WSFS in certain circumstances. Paragraph 8.02 of the SPA provides:

> Indemnification by Seller [National Penn].   [National Penn] will indemnify and hold harmless [WSFS] and its representatives, stockholders, controlling persons, and Affiliates (collectively, the "Buyer Indemnified Persons") for, and will pay to the Buyer Indemnified Persons the amount of, any loss, liability, claim, damage (including incidental and consequential damages), expense (including witness fees, costs of investigation and defense and reasonable attorneys' fees) or diminution of value, whether or not involving a third-party claim (collectively, "Damages"), arising, directly or indirectly, from or in connection with:
>
> …
>
> (e)     ***with respect to Life Insurance Trusts, any litigation or other legal proceeding, whether civil, criminal, administrative or investigative***.

2

SPA at Section 8.02 (emphasis added).

9.      "Life Insurance Trusts" means "the trust arrangements identified on Seller

Disclosure Schedule 8.02(e)."  SPA at Section 1.01 ("Definitions").  Pursuant to Seller

Disclosure Schedule 8.02(e), "Life Insurance Trusts" is defined to include:

> the trust arrangements attached hereto, and other trust arrangements whereby [Christiana] has served, as of or at any time prior to the Closing Date, as trustee of an account holding, pertaining or relating in any way to viatical settlements, life insurance settlements, stranger owned life insurance, investor owned life insurance, or speculator initiated life insurance, including any securitization of such assets.  For the avoidance of doubt, Life Insurance Trusts shall not include any standard or ordinary course irrevocable life insurance trusts established for estate planning purposes.

10.      In April 2016, National Penn merged with BB&T.  As a result of the merger, the

indemnification obligations that National Penn owed to WSFS under the SPA transferred to

BB&T, as successor in interest to National Penn.

**II.      The Arbitration**

11.      In April 2015, Universitas Education, LLC ("Universitas") commenced the

Arbitration against WSFS, as successor in interest to Christiana, by filing a Notice of Arbitration

and Statement of Claim ("Statement of Claim") with the American Arbitration Association.

12.      Universitas alleged that Christiana was the insurance trustee of Charter Oak Trust

Welfare Benefit Plan ("Charter Oak Trust"), a trust marketed as a multiple employer welfare

benefit plan offering businesses the opportunity to provide life insurance benefits to executives.

Christiana's co-trustee, Nova Group Inc. ("Nova"), was allegedly controlled by Daniel

Carpenter, a previously convicted felon.

13.      Universitas further alleged that pursuant to the Declaration of Trust, Christiana

was responsible for "doing any and all things and executing any and all such instruments as may

be deemed necessary or proper to carry out the purposes" of the Trust, which was "to provide certain life benefits and Death Benefits" for specified employees.

14.    Universitas alleged that it was the named beneficiary of two life insurance policies issued on the life of Sash Spencer that were placed in the Charter Oak Trust and that, upon Spencer's death, the proceeds of those policies were paid to the Trust and then fraudulently transferred by Carpenter and Nova to shell companies.

15.    Universitas sought damages from WSFS for Christiana's alleged failure to prevent the looting of these insurance proceeds by Carpenter and Nova while Christiana was trustee.

16.    WSFS defended the Arbitration and ultimately reached a monetary settlement with Universitas.

17.     Upon information and belief, the total amount incurred by WSFS in connection with its defense and settlement of the Arbitration (the "WSFS Damages") is less than the limit of indemnification under the SPA.

**III.    WSFS's Indemnification Demand**

18.    By letter dated April 28, 2015, WSFS sought indemnification from National Penn with respect to the Arbitration under the terms of the SPA.  WSFS subsequently provided additional information to National Penn in support of this request, by letter dated June 22, 2015.

19.    By letter dated July 2, 2015, National Penn denied WSFS's indemnification demand, asserting that there was insufficient evidence that an indemnification obligation exists under Section 8.02(e) of the SPA in connection with the arbitration, because National Penn maintained that the Sash Spencer policies do not qualify as and are not part of any "Life Insurance Trusts" as defined by the SPA.

20.     By letter dated August 11, 2015, WSFS disagreed with National Penn's denial of indemnity, explaining in detail why National Penn has an indemnity obligation under Section 8.02(e) of the SPA and providing additional information that National Penn requested.  Among other things, the August 11, 2015 letter explained in detail why the indemnity obligation under Section 8.02(e) applies because the Charter Oak Trust held Covered Life Insurance Products or pertained or related in any way to Covered Life Insurance Products, including stranger-oriented life insurance ("STOLI") policies.

21.     By letter dated November 20, 2015, National Penn continued to refuse to provide indemnification to WSFS in connection with the Arbitration, and urged WSFS instead to seek insurance coverage for the Arbitration.

22.     By letter dated January 11, 2016, WSFS continued to assert that National Penn's indemnity obligation had been triggered, noting that WSFS had provided overwhelming evidence of this, which National Penn had largely ignored.  WSFS further stated that it intended to file suit against National Penn if National Penn did not agree to indemnify it by January 26, 2016, and attached a draft complaint to the letter, alleging breach of contract and seeking specific performance of National Penn's obligation to indemnify pursuant to the SPA.

23.     On June 9, 2016, Carpenter was convicted of conspiracy, mail and wire fraud, money laundering and illegal monetary transaction offenses stemming from a STOLI scheme through the Charter Oak Trust.  This ruling is further evidence that the indemnification obligation under Section 8.02(e) of the SPA applies because the WSFS Damages arise from or in connection with an arbitration with respect to Life Insurance Trusts as defined by the SPA and Disclosure Schedule 8.02(e) thereto.

24.     After National Penn was acquired by BB&T, BB&T and WSFS entered into a Tolling Agreement dated April 12, 2017 regarding the parties' dispute over BB&T's indemnification obligation, as successor in interest to National Penn.

## III.     Insurance Coverage Action and Settlement

25.     WSFS, as successor in interest to Christiana, sought to hold Houston Casualty liable under Trust Errors and Omissions Liability Insurance Policy No. 24-MG-14-A11815 (the "Policy") for the WSFS Damages in a lawsuit captioned *Wilmington Savings Fund Society, FSB v. Houston Casualty Company, et al.*, C.A. No. 1:17-cv-01867-MAK (D. Del.) (the "Insurance Coverage Action").

26.     On September 7, 2018, WSFS and Houston Casualty executed a Settlement Agreement and Release that resolved all of WSFS's claims against Houston Casualty in the Insurance Coverage Action.

27.     Pursuant to the terms of the Settlement Agreement and Release, and without admitting any liability, Houston Casualty paid $5,000,000.00 to WSFS (the "Settlement Payment"). Paragraph 1 of the Settlement Agreement and Release states that the Settlement Payment, less any amount Houston Casualty recovers from BB&T, shall be deemed "Loss" as defined by the Policy.

28.     Section VIII.D of the Policy states, in relevant part, that "[i]n the event of any payment under th[e] Policy, the Insurer shall be subrogated to the extent of such payment to all Insured Persons' or the Company's rights to recovery therefor."

29.     By virtue of the Settlement Payment and Section VIII.D of the Policy, Houston Casualty became contractually and/or equitably subrogated to the rights of WSFS to the extent of the payment made.

## COUNT I – CONTRACTUAL INDEMNITY

30.     Houston Casualty incorporates the allegations set forth in paragraphs 1 through 28 as if fully set forth herein.

31.     Pursuant to Section 8.02(e) of the SPA, BB&T, as successor in interest to National Penn, must indemnify and hold harmless WSFS for "any loss, liability, claim, damage (including incidental and consequential damages), expense (including witness fees, costs of investigation and defense and reasonable attorneys' fees) or diminution of value, whether or not involving a third-party claim (collectively, 'Damages'), arising, directly or indirectly, from or in connection with … with respect to Life Insurance Trusts, any litigation or other legal proceeding, whether civil, criminal, administrative or investigative."

32.     The Charter Oak Trust qualifies as a "Life Insurance Trust" under Section 1.01 of the SPA and Seller Disclosure Schedule 8.02(e) because it is a "trust arrangement[ ] whereby [Christiana] has served, as of or at any time prior to the Closing Date, as trustee of an account holding, pertaining or relating in any way to… stranger owned life insurance, investor owned life insurance, or speculator initiated life insurance" as established by, among other things, the 2016 conviction of Carpenter and the facts cited in WSFS's letters to National Penn.

33.     The Arbitration thus is a legal proceeding with respect to a Life Insurance Trust for purposes of Section 8.02(e) of the SPA, and the WSFS Damages that WSFS incurred in connection with the Arbitration constitute Damages as defined by the SPA, for which BB&T is liable pursuant to its indemnification obligations under the SPA.

34.     WSFS timely sought indemnity from BB&T or its predecessor under the SPA, and has properly complied with all applicable conditions in the SPA to render BB&T's indemnification obligation due and owing.

7

35.     WSFS is therefore entitled to judgment against BB&T in the amount of the WSFS

Damages.

## PRAYER FOR RELIEF

WHEREFORE, Houston Casualty, as partial subrogee of WSFS, prays for judgment

against BB&T in the amount of its Settlement Payment; for the costs of the litigation, including

reasonable attorney and expert witness fees; and for such other relief as this Court deems proper.


Respectfully submitted,

Date: September 25, 2018              */s/ John C. Phillips, Jr.*_____
                                      John C. Phillips, Jr. (#110)
                                      David A. Bilson (#4986)
                                      PHILLIPS GOLDMAN MCLAUGHLIN & HALL, P.A.
                                      1200 North Broom Street
                                      Wilmington, DE 19806
                                      (302) 655-4200
                                      jcp@pgmhlaw.com
                                      dab@pgmhlaw.com

                                      OF COUNSEL:

                                      Alexander R. Karam
                                      CLYDE & CO US LLP
                                      1775 Pennsylvania Avenue, NW, 4th Floor
                                      Washington, DC 20006
                                      (202) 747-5100
                                      alex.karam@clydeco.us

                                      *Attorneys for Plaintiff*
                                      *Houston Casualty Company*